# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-01113-SCT

*MATTHEW HENNINGTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/95 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM F. FERGUSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/20/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/11/97 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case comes before this Court as a criminal appeal from the Circuit Court of Copiah County, Mississippi. Matthew Hennington was indicted by the Grand Jury of Copiah County on May 4, 1995, charging that he did wilfully, unlawfully, and feloniously engage in sexual penetration of A.R.[1] Hennington was tried and convicted of sexual battery and sentenced to serve a term of thirty years in the custody of the Mississippi Department of Corrections and to receive psychological help while in custody.

¶2. Aggrieved by his conviction and subsequent sentence, Hennington appeals to this Court raising the following issues:

**I. WHETHER A DIRECTED VERDICT OF "NOT GUILTY" SHOULD HAVE BEEN GRANTED.**

**II. WHETHER THE STATEMENTS OF MATTHEW HENNINGTON SHOULD HAVE BEEN ADMITTED INTO EVIDENCE.**

**III. WHETHER THE LOWER COURT ERRED BY FINDING THE CHILD VICTIM UNAVAILABLE AS A WITNESS.**

**IV. WHETHER CERTAIN WITNESSES FOR THE STATE GAVE INADMISSIBLE HEARSAY TESTIMONY.**

¶3. After reviewing the record and this Court's prior case law, we hold that the lower court did not err. Therefore, Hennington's conviction of sexual battery and sentence to thirty years in the custody of the Mississippi Department of Corrections is affirmed.

## STATEMENT OF THE FACTS

¶4. Hennington was convicted of the sexual battery of A.R., a ten-year old male, on February 26, 1995. M.H., the victim's mother, testified that she became concerned about A.R. when he failed to complete his schoolwork. Upon talking to A.R. about this, he stated that he was being abused by Hennington. The child stated to his mother that two days earlier Hennington had taken him into the woods behind the child's house, had performed oral sex on A.R., masturbated A.R., and had made A.R. masturbate him.

¶5. M.H. called and made an appointment for an interview with Mr. Billy Mangold, a social worker for the Mississippi Department of Human Services. Mangold testified that A.R. told him that Hennington placed his hands on A.R.'s penis and moved them up and down. Mangold also stated that A.R. was made to place his hands on Hennington's penis and move it up and down "until white stuff came out." Mangold took several pictures of A.R.'s penis to accurately document the physical injuries sustained as a result of the sexual battery.

¶6. Mangold contacted Hennington and requested that he come by Mangold's office to talk about the allegations. Hennington came voluntarily and was interviewed by Mangold. Mangold informed Hennington that if the allegations were substantiated any information disclosed by Hennington to Mangold would be turned over to law enforcement authorities. Hennington then admitted to Mangold that he had engaged in oral sex with A.R., had masturbated A.R., and had A.R. masturbate him. Further, Hennington stated to Mangold that he was very sorry for the incident and he intended to turn himself in to the sheriff's department the next day.

¶7. M.H. was instructed by Mangold to take A.R. to see a doctor. She took A.R. to see Dr. Ken Whittington, a family medical practitioner with the Copiah Medical Associates, at the Crystal Springs Clinic. Dr. Whittington testified that A.R. was brought to him for a physical examination to detect any signs of sexual abuse. Dr. Whittington stated that he asked A.R. what had happened to him. A.R. explained to the doctor, as he had done to M.H. and Mangold, what Hennington had done to him. Dr. Whittington conducted a physical examination of A.R. and observed abrasions on his penis that had scabbing. The doctor stated that the abrasions were in an arc like formation consistent with the distribution of teeth marks.

¶8. Prior to testimony by M.H., Mangold, or Whittington, A.R. was called before the court to

determine his availability as a witness. A.R., with his attorney present, was interviewed by the judge in chambers outside the presence of the attorneys for the State and the Defense. The judge requested A.R. to testify, and he stated that he did not want to testify. A.R. stated that he did not want to go into court. The judge ordered A.R. to testify and asked if there was anything he could do to make him testify before the court. A.R. simply refused to testify.

¶9. The judge found A.R. unavailable under Miss. R. Evid. 804(a)(2). However, the Defense objected and claimed that the only way A.R. could be found unavailable to testify was under Miss. R. Evid. 804(a)(6), because this was a case dealing with a child. The court agreed with the State's argument that if the witness is found unavailable by Miss. R. Evid. 804(a)(2), there was no need for a separate finding on Miss. R. Evid. 804(a)(6).

¶10. At the close of the State's case-in-chief, the defense moved for a Directed Verdict, which was denied. The Defense rested without presenting any evidence. After hearing closing arguments from both sides, the jury began deliberations. The jury found Hennington guilty of sexual battery. An Allocution Hearing was had, and character witnesses for Hennington testified and asked for the court to be lenient.

¶11. Hennington had been previously convicted in Hinds County for the crime of gratification of lust. He was on probation for that crime when he committed the sexual battery against A.R. The lower court was aware of this prior conviction in Hinds County and the lenient sentence where he was ordered to go to therapy while on probation. The judge sentenced Hennington to a period of thirty years in the Mississippi Department of Corrections.

**DISCUSSION OF THE ISSUES**

**I. WHETHER A DIRECTED VERDICT OF "NOT GUILTY" SHOULD HAVE BEEN GRANTED.**

¶12. The indictment charging Hennington stated that he "did wilfully, unlawfully, and feloniously engage in sexual penetration _**of**_ A.R., a male person under the age of fourteen years, by then and there wilfully, unlawfully and feloniously putting his mouth and hands on the penis of the said A.R. contrary to and in violation of Section 97-3-95 of the Mississippi Code of 1972, and against the peace and dignity of the State of Mississippi." (emphasis added). Hennington claims that the indictment charged him with penetration "_**of**_" a child, instead of penetration "_**with**_" a child. (emphasis added). Therefore, he argues that the State did not meet its burden of proof that A.R. was penetrated by the act of fellatio. Hennington concedes that Miss. Code Ann. § 97-3-97 defines sexual penetration as including fellatio and that this Court has held that an act of fellatio performed by the accused is an act proscribed by the statute.

¶13. The two statutes that are controlling in this case are Miss. Code Ann. § 97-3-95 and § 97-3-97.

**§ 97-3-95. Sexual battery.**

(1) A person is guilty of sexual battery if he or she engages in sexual penetration _**with**_:

(a) Another person without his or her consent;

(b) A mentally defective, mentally incapacitated or physically helpless person; or

(c) *A child under the age of fourteen (14) years*.

(2) A person is guilty of sexual battery if he or she engages in sexual penetration with a child of fourteen (14) but less than eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

**§ 97-3-97 Sexual battery; definitions.**

For purposes of sections 97-3-95 through 97-3-103 the following words shall have the meaning ascribed herein unless the context otherwise requires:

(a) "Sexual penetration" includes cunnilingus, *fellatio*, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.

Miss. Code Ann. §§ 97-3-95, -97(a) (1994) (emphasis added).

¶14. Hennington attempts to confuse the Court by engaging in an exercise of semantics by claiming the language in the indictment was penetration "of" rather than penetration "with" the victim. An indictment that tracts the language of the statute is generally sufficient to inform the accused of the charge against him. *Cantrell v. State*, 507 So. 2d 325, 329 (Miss. 1987). However, in order to be sufficient, the indictment must contain the essential elements of the crime with which the accused is charged. *Peterson v. State*, 671 So. 2d 647, 653 (Miss. 1996).

¶15. In *Love v. State*, 211 Miss. 606, 52 So. 2d 470 (Miss. 1951), the Court promulgated the requirements for the sufficiency of the indictment. The Court reiterated those requirements in *Peterson*:

> [i]t is fundamental. . .that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based, or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient. . . . Every material fact and essential element of the offense -- every essential element of the offense -- must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment.

*Peterson*, 671 So. 2d at 653 (*quoting Love*, 211 Miss. at 611, 52 So. 2d at 472).

¶16. "Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." URCCC 7.06. There are safeguards provided to the accused. Due Process requires the State to prove each element of the offense charged in the indictment beyond a reasonable doubt. *Washington v. State*, 645 So. 2d 915, 918 (Miss. 1994).

¶17. Hennington misinterprets the statutes and the prior holdings of this Court. "Penetration is the

very essence of the crime of sexual battery." *Id.* at 917; *Thompson v. State*, 468 So. 2d 852, 853 (Miss. 1985). This Court held that "proof of contact, skin to skin, between a person's mouth, lips, or tongue and the genital opening of a woman's body, whether by kissing, licking, or sucking, is sufficient proof of 'sexual penetration'. . .." *Johnson v. State*, 626 So. 2d 631, 633-34 (Miss. 1993). Today, we hold that the same should apply to all persons regardless of the gender of the victim or the perpetrator.

¶18. Sexual penetration was defined by the legislature in Miss. Code Ann. § 97-3-97 (1994) to include fellatio or any penetration of the genitalia by any part of a person's body. This Court specifically stated that fellatio does involve penetration. *Miller v. State*, 636 So. 2d 391, 396 (Miss. 1994). The Court went on to say, "Fulfillment of the sodomy penetration requirement is not restricted to acts wherein the accused does the penetrating. We hold that an act of fellatio performed by the accused is an act proscribed by the statute." *Id.*

¶19. Hennington claims that there was no evidence that any portion of A.R.'s body was actually penetrated by Hennington. This argument is specious and simply without merit. The legislature has proscribed the act of fellatio by including it in the definition of sexual battery. This Court has stated proof of skin to skin contact between a person's mouth, lips, or tongue and the genitalia of a person's body, whether by kissing, licking, or sucking, is sufficient proof of "sexual penetration."

¶20. While it is true that the indictment did not use the exact language of the statute, the essential elements for the crime of sexual battery were contained in the indictment. There is no question that the evidence proved beyond a reasonable doubt that Hennington performed fellatio on A.R., a child less than fourteen years of age. Whether there was penetration "of" or penetration "with" A.R. is not an essential element of the crime and is not relevant. The proof showed beyond a reasonable doubt that Hennington penetrated A.R., according to Miss. Code Ann. § 97-3-95 and the prior holdings of this Court, and was guilty of sexual battery. We find that the lower court did not err by denying Hennington's Motion for a Directed Verdict.

### II. WHETHER THE STATEMENTS OF MATTHEW HENNINGTON SHOULD HAVE BEEN ADMITTED INTO EVIDENCE.

¶21. After interviewing A.R., Mangold contacted Hennington by phone and requested that he come to the welfare office to speak to Mangold regarding the allegations of sexual abuse against him. Hennington, accompanied by his mother and father, came to Mangold's office the same day A.R. was interviewed. Hennington spoke to Mangold privately, while his mother and father waited in another room. Mangold explained to Hennington that the purpose of the visit was to discuss allegations of sexual abuse. Hennington was then informed that his side of the story needed to be told. However, Mangold told him that if the allegations were substantiated, any information would have to be turned over to law enforcement officials. Mangold testified that Hennington admitted to the allegations and corroborated the earlier story of A.R.

¶22. Hennington contends his statements to Mangold should not have been admitted into evidence, because Mangold was a licensed social worker employed by the State of Mississippi and did not inform Hennington of his Miranda rights. Mangold only warned Hennington that anything he said would have to be reported by Mangold to law enforcement officials.

¶23. There are two reasons why Hennington's argument must fail. First, Mangold, as a social worker, is not a law enforcement official. He had no authority to arrest Hennington. Mangold was under a duty to report any suspected sexual abuse that he uncovered as a result of his investigation to law enforcement authorities. Miss. Code Ann. § 43-21-353(1993). "The mere fact that an investigation has focused on a suspect does not trigger the need for Miranda warnings in non custodial settings. . .." *Minnesota v. Murphy*, 465 U.S. 420, 431 (1984)

¶24. Second, Hennington was not in custody. Therefore, he was not subjected to custodial interrogation. The Supreme Court has explained "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

¶25. Hennington voluntarily came to Mangold's office to discuss the allegations of sexual abuse. He could have left at any time during the interview. Mangold's investigation centered around Hennington as a result of A.R.'s assertions. "In a non-custodial setting where interrogation is investigatory in nature. . ., *Miranda* warnings are not required in order that a defendant's statements be admissible." *Porter v. State*, 616 So. 2d 899, 907 (Miss. 1993).

¶26. Taken as a "totality of the circumstances," the facts contained in the record before this Court do not rise to the level of custodial interrogation as defined by the Supreme Court in *Miranda*. This Court holds that the mere investigation by a social worker in a non-custodial setting does not require an alleged abuser to be advised of his *Miranda* rights. Thus, the lower court did not err when it admitted into evidence Hennington's confession to the allegations of sexual abuse of A.R. to Mangold.

### III. WHETHER THE LOWER COURT ERRED BY FINDING THE CHILD VICTIM UNAVAILABLE AS A WITNESS.

¶27. Hennington claims the lower court committed reversible error by finding A.R. unavailable as a witness. He asserts two arguments to support his claims. First, Hennington claims the actions by the State caused A.R. to refuse to testify in contravention of the second paragraph of Miss. R. Evid. 804(a). "A declarant is not unavailable as a witness if his exemption, ***refusal***, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying." Miss. R. Evid. 804(a) (emphasis added). He argues that A.R. was promised anonymity by Mangold and that the child felt victimized by the system. Hennington argues that the testimony by Joseph A. Fernald, Jr., A.R.'s attorney, proves the child felt embarrassed, victimized and a little intimidated, due to the media coverage surrounding the charges against Hennington.

¶28. There is simply no substantiated proof in the record before this Court that the State was responsible for the media coverage. The only suggestion comes from Fernald's testimony where he commented as to what A.R.'s "understanding" was. While it is true Fernald's testimony indicated the child was intimidated and felt victimized, the record is void of any proof to substantiate any wrongdoing on the part of the State. Fernald testified that A.R. told him that "he was told he would be able to retain anonymity, and he would not be -- his name would not become public." When asked who had told A.R. these things, Fernald could not provide an answer sufficient to implicate the State or any of its agents.

Q. Who was it -- excuse me. Who was it that made those representations to him; do you know?

A. Well, in my conversations with him, we've not gotten into the actual incidents. He has a lot of questions about process, but we've never gotten into who promised what to who. He just saw his name in the newspaper or he saw in the newspaper a story which led people to believe that he had been the victim, and it affected him. We've examined that newspaper article when I was retained.

Q. Is it not correct that the anonymity you mentioned was what was offered to him or promised by Mr. Mangold when he first talked to him?

A. Well, the child has never come right out and told me in so may words that. I've discussed it with his mother, his natural parent, and that's what his understanding is.

¶29. No where in the record before this Court is there evidence that Mangold informed the media of the facts in this case. There is only speculation on the part of the child and the defense. The appellant is responsible for bringing to this Court's attention and presenting a record of trial proceedings sufficient to undergird his assignments of error. *Winters v. State*, 473 So. 2d 452, 457 (Miss. 1985); *Queen v. Queen*, 551 So. 2d 197, 199 (Miss. 1989). *See also* *Wallace v. State*, 607 So. 2d 1184, 1189 (Miss. 1992)(assertions in the brief without support in the record are without merit). The record is void of any direct proof that Mangold was responsible for A.R. refusing to testify. Mere speculation does not rise to the level of proof required to prohibit the lower court from finding a witness unavailable under Miss. R. Evid. 804 (a).

¶30. Second, Hennington states that the lower court did not find A.R. unavailable under the correct subsection of Miss. R. Evid. 804(a). The court found the child unavailable under Miss. R. Evid. 804(a)(2) after he refused to testify. Hennington argued before the lower court and now on appeal before this Court that the correct subsection under which to find the child unavailable is Miss. R. Evid. 804(a)(6). The State contended, and the lower court agreed, that if a child witness is found unavailable under Miss. R. Evid. 804(a)(2), there is no need to address Miss. R. Evid. 804(a)(6).

¶31. Miss. R. Evid. 804(a)(2) and (6) provide:

"Unavailability as a witness" includes situations in which the declarant:

* * *

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

* * *

(6) In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused.

¶32. The child, with his attorney present, was interviewed in chambers by the trial judge. Although the State and Defense were not present during these proceedings, a record was made and played back

to both sides prior to the judge making a ruling on the child's availability. The following are excerpts from those proceedings:

THE COURT: . . .And that means that you'll have to come into court and tell the ladies and gentlemen on the jury what you know about this case. And I have to make you do that, A.R. I know you probably don't want to, do you?

A.R.: (Shakes head negatively.)

* * *

A.R.: Yes. No, I don't want to go into court.

THE COURT: You don't want to go in the courtroom?

A.R.: No.

THE COURT: . . . As the judge, I have to make people do things sometimes that they don't want to do. And I have to do that in this case. I have to order that you go in the courtroom and tell what you know about this. So will you do that?

A.R.: I don't want to, though.

THE COURT: I understand. Will you do it? I know you don't want to.

A.R.: No.

THE COURT: You won't do that?

A.R.: No.

THE COURT: Well, [A.R.], it's my job to order you to do that, and if you don't do what I tell you to do, it's not easy for me being the judge, but it's -- you could be in trouble if you don't do what I ask you to do. I'm going to have -- I'm going to have to order you to go in there and testify. Will you do it now? Either you will or you won't, [A.R.]. . . .Either you will or you won't. Can you do that today?

A.R.: (Shakes head negatively.)

* * *

A.R.: I don't want to testify.

THE COURT: Well, I know you don't want to, but I have to order you to because it's important. What I need to know is if I order you to, which I'm doing right now, will you do that?

A.R.: No.

THE COURT: Sir?

A.R.: No.

THE COURT: All right. Is there any way I could get you to go out there and testify?

A.R.: No.

THE COURT: There's nothing I could say or do to you that would make you testify today?

A.R.: No.

THE COURT: You're not going to do it regardless of what I say; is that right?

A.R.: Right.

THE COURT: Sir?

A.R.: Right.

¶33. The trial judge's determination on the availability of a witness will not be disturbed on appeal unless this Court finds the trial judge abused his discretion. *Russell v. State*, 670 So. 2d 816, 827 (Miss. 1995). Clearly the record before this Court indicates the judge did all he could to persuade the child to testify. His repeated attempts were met with a flat refusal by the child. He simply did not want to go into court and testify about what had happened to him. We hold that the trial judge correctly found the child unavailable as a witness under Miss. R. Evid. 804(a)(2).

¶34. Hennington contends that because the witness was a child the only way to have found him unavailable was under Miss. R. Evid. 804(a)(6). He bases his argument on a very expansive reading of this Court's prior decisions in *Griffith v. State*, 584 So. 2d 383 (Miss. 1991) and *Quimby v. State*, 604 So. 2d 741(Miss. 1992). Those cases involved child witnesses in trials that took place prior to the adoption of Miss. R. Evid. 804(a)(6) by this Court. Both cases were remanded with instructions from this Court that the trial judge consider the testimony in light of the new Miss. R. Evid. 804(a)(6).

¶35. Those two cases are factually distinguishable from the case sub judice. In *Griffith* and *Quimby* neither witness was found unavailable under the existing subsections of Miss. R. Evid. 804 (a). In the case before this Court presently on appeal, the child witness simply refused to testify and was found unavailable under Miss. R. Evid. 804(a)(2). The trial judge never had to analyze the availability of the child under Miss. R. Evid. 804(a)(6).

¶36. A plain reading of the Rules of Evidence provides the answer to this issue. Miss. R. Evid. 601 provides who is competent to testify as a witness.

Every person is competent to be a witness except as restricted by the following:

(a) In all instances where one spouse is a party litigant the other spouse shall not be competent as a witness without the consent of both, except as provided in Rule 601(a)(1) or Rule 601(a)(2):

(1) Husbands and wives may be introduced by each other in all cases, civil or criminal, and shall

be competent witnesses in their own behalf, as against each other, in all controversies between them;

(2) Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children.

(b) A person convicted of perjury or subornation of perjury shall not be a competent witness in any case, even though pardoned or punished for the same.

(c) A person appointed by a court as required by state law to make an appraisal in an eminent domain proceeding for the immediate possession of land shall not be eligible to testify in the trial of such case, and the report of such court appointed appraiser shall not be admissible in evidence during such trial.

Miss. R. Evid. 601. No where in the above language is there an exception for children. They are treated as all other witnesses, and not distinguished from adult witnesses.

¶37. The language in Miss. R. Evid. 804(a) begins "'[u]navailability as a witness' includes situations in which the declarant. . .." There is no limiting language as to who a witness or declarant might be. The rule simply lists the different situations in which a witness might be found unavailable. Each subsection is joined with the conjunction "or." This literally means that a witness might be found unavailable under any of the subsections. There is no requirement that a witness meet the requirements of two subsections prior to being found unavailable.

¶38. The factual situation determines which subsection applies by beginning with the first subsection and continuing down the list until there is a match. The language of the first five subsections do not exclude child witnesses. They include all witnesses. However, if a child cannot be found unavailable under the first five, the last subsection allows a special exception for children that have not been found otherwise unavailable. The argument made by Hennington that a child witness may only be found unavailable by Miss. R. Evid. 804(a)(6) is without merit. Simply put, the first five subsections of Miss. R. Evid. 804(a) allow a finding of unavailability of any witness. But if a child cannot be found unavailable under the first five subsections, there is another option exclusively for child witnesses. Miss. R. Evid. 804(a)(6) allows child witnesses to be found unavailable who have not otherwise been found unavailable under Miss. R. Evid. 804(a)(1-5).

¶39. The trial court was correct in finding A.R. unavailable under Miss. R. Evid. 804(a)(2). Having correctly found A.R. unavailable, there was no need for a separate finding under Miss. R. Evid. 804(a)(6). The trial judge did not abuse his discretion in finding A.R. unavailable. Therefore, Hennington's arguments as to this issue are without merit.

### IV. WHETHER CERTAIN WITNESSES FOR THE STATE GAVE INADMISSIBLE HEARSAY TESTIMONY.

¶40. Hennington argues that the testimony of Dr. Whittington, the examining physician, M.H., the mother of the child, and Mangold, the social worker, should have been excluded as inadmissible

hearsay which did not come within an enumerated exception. We find that the record shows the trial court followed the proper procedures, had the necessary hearings and made the necessary findings of reliability prior to accepting the testimony of each of the witnesses.

¶41. Miss. R. Evid. 801 defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Miss. R. Evid. 803 delineates certain exceptions to the hearsay rule. Pertinent to the present case are the exceptions found in subsections (4) and (25).

¶42. Rule 803(4) provides:

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness.

¶43. Rule 803(25) provides:

> [a] statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

Miss. R. Evid. 803(25) allows statements of "causation and fault [and] has been expanded to include the identity of the perpetrator in child abuse cases." *Young v. State*, 679 So. 2d 198, 203 (Miss. 1996)(*quoting Jones v. State*, 606 So. 2d 1051, 1056 (Miss. 1992)).

¶44. This Court has contradicted itself in its past decisions regarding its interpretation of Miss. R. Evid. 803(4). In *Eakes v. State*, 665 So. 2d 852 (Miss. 1995), the Court wrote:

> This Rule allows statements identifying the perpetrator in child abuse cases. *Doe*, 644 So. 2d at 1205 (*citing Jones v. State*, 606 So. 2d 1051, 1056 (Miss.1992) and *Mitchell v. State*, 539 So. 2d 1366 (Miss.1989)). A dual-pronged test must be met prior to admission of evidence pursuant to M.R.E. 803(4): " 'the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and. . .the content of the statement must be such as is reasonably relied on by a physician in treatment.'" *Doe*, 644 So. 2d at 1206 (*quoting Jones v. State*, 606 So. 2d 1051, 1056 (Miss. 1992)(*citing U.S. v. Renville*, 779 F.2d 430, 436 (8th Cir.1985))). A statement identifying the perpetrator as a member of the victim's household is reasonably pertinent to treatment and, consequently, reasonably relied upon by physicians in diagnosis and treatment. *Doe*, 644 So. 2d at 1206 (*citing Jones*, 606 So. 2d at 1056-57).

> Applying, the two-part test which must be met prior to a finding of admissibility, it is first noted that the motive behind informing a treating physician that one has been sexually abused is

consistent with the purposes of promoting treatment. The doctor cannot begin to treat the patient without knowing the patient's complaint. ***Surely prevention of further abuse is part of the treatment of sexual abuse; therefore, the motive behind identifying the perpetrator is also consistent with the purposes of promoting treatment. Given the premise underlying the "medical history/diagnosis" exception to the hearsay rule, i.e., that patients do not lie to their doctors when requesting treatment, a statement that one has been sexually abused, as well as any identification of the perpetrator, is reasonably pertinent to treatment and, therefore, reasonably relied upon by a treating physician.***

In *Doe*, this Court expanded *Jones*, *supra*, to allow a finding that the identity of the child's sexual abuser was pertinent to treatment, therefore reasonably relied upon by the treating physician, although the perpetrator was not a member of the child's household. ***Since the alleged perpetrator in Doe was the child's father, whose visitation rights were at issue, this Court reasoned that prevention of further abuse was an immediate concern.*** *Doe*, 644 So. 2d at 1206. ***It follows that prevention of further abuse will always be an immediate concern, whether the perpetrator has daily, weekly, or only sporadic opportunity to abuse a child.***

***There is no logical reason to find that a statement identifying the perpetrator is sufficiently pertinent to treatment and reliable if the perpetrator is someone who has regularly scheduled contact with the child but not if the perpetrator is, instead, a family friend, an acquaintance, or a stranger.*** The statement regarding April's identification of Eakes as her abuser, although he was not a member of April's household or someone who had regular contact with the child, was properly admitted pursuant to M.R.E. 803(4).

*Eakes*, 665 So. 2d at 866-67.

¶45. Less than two months after *Eakes* was decided, this Court issued its opinion in ***Johnson v. State***, 666 So. 2d 784 (Miss. 1995). In ***Johnson***, the Court contradicted its earlier holding in ***Eakes***.

Under [Miss. R. Evid.] 803(4), statements by a child victim relied upon by a treating physician identifying the perpetrator as a member of the child's household are admissible in child abuse cases. ***Doe v. Doe***, 644 So. 2d 1199, 1206 (Miss. 1994). ***Where the child is sexually assaulted by a member of the child's immediate household, an important part of treatment is the prevention of further sexual abuse as well as the treatment of emotional and psychological injuries. Jones v. State, 606 So. 2d 1051, 1056-57 (Miss. 1992). Where the perpetrator is not a member of the child's immediate household, it is error to admit statements identifying the perpetrator made by the child to a treating physician.*** However, such admission will be harmless if the testimony is merely cumulative. ***Jones,*** 606 So. 2d at 1057. To be admissible under 803(4), " 'the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and. . .the content of the statement must be such as is reasonably relied on by a physician in treatment.'" ***Doe***, 644 So.2d at 1205-06 (*quoting* ***Jones***, 606 So.2d at 1056)).

*Johnson*, 666 So. 2d at 795.

¶46. This Court expanded its reading of the Miss. R. Evid. 803(4) exception to include the identity of

the perpetrator in child abuse cases in *Mitchell v. State*, 539 So. 2d 1366 (Miss. 1989). *See Jones v. State*, 606 So. 2d 1051, 1056 (Miss. 1992). In *Mitchell*, the Court stated:

> many courts, State and Federal, with evidence rules similar to ours, admit statements by child sexual abuse victims to physicians and psychologists while being examined, diagnosed, and treated following an incident of sexual abuse under exceptions analogous to M.R.E. 803(4). However, for the most part, physicians and psychologists have been allowed to testify only about the incident, as related by the child, and not about the identity of the assailant, [unless the identity of the assailant][2] is reasonably pertinent to treatment, *such as in cases where the child has been sexually assaulted by a member of the family. In such cases, the need to remove the child from the situation becomes a pertinent part of the treatment. See*, *e.g*, *Morgan v. Foretich*, 846 F.2d 941 (4th Cir.1988); *United States v. Renville*, 779 F.2d 430 (8th Cir.1985); *U.S. v. Iron Shell*, 633 F.2d 77 (8th Cir.1980); *U.S. v. Nick*, 604 F.2d 1199 (9th Cir.1979); *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987). *See also*, *Hall v. State*, 539 So. 2d 1338 (Miss.1989).

*Jones*, 606 So. 2d at 1056 (*quoting Mitchell*, 539 So. 2d at 1370) (emphasis added).

¶47. The Court takes this opportunity to set forth definite guidelines regarding the admission of hearsay testimony under Miss. R. Evid. 803(4) as to the identification of the perpetrator in a sexual abuse case. Justice Prather, writing for the Court, stated that prevention of further abuse will always be an immediate concern, whether the perpetrator has daily, weekly, or only sporadic opportunity to abuse a child. *Eakes*, 656 So. 2d at 867. The Court reasoned that it was illogical to find that a statement identifying the perpetrator is sufficiently pertinent to treatment and reliable if the perpetrator is someone who has regularly scheduled contact with the child but not if the perpetrator is, instead, a family friend, an acquaintance, or a stranger. *Id.* We find this to be the more reasoned and logical approach.

¶48. When the Court expanded the exception of Miss. R. Evid. 803(4) to include the identity of the perpetrator of the sexual abuse, it reasoned that "the need to remove the child from the situation becomes a pertinent part of the treatment." *Jones*, 606 So. 2d at 1056 (*quoting Mitchell*, 539 So. 2d at 1370). Clearly, the paramount concern in treatment of sexual abuse is to ensure that a child is not returned to the environment that fostered, allowed, or permitted the abuse. Although the perpetrator was not an immediate family member living in the same home as the child, the record shows that Hennington frequented the home of the child.

¶49. Today, the Court firmly states its position as a reaffirmation of the holding in *Eakes*. Therefore, we hold that hearsay testimony identifying the perpetrator is admissible under Miss. R. Evid. 803(4) regardless of whether he or she is a member of the child's immediate household. The overriding question making the inquiry necessary is, "Will the perpetrator have access to the child in the future that would allow the sexual abuse to continue?" Because the inquiry is necessary for treatment, the answer is admissible under the Rule.

### A. Testimony of Dr. Ken Whittington --

¶50. Whittington testified that A.R. was brought to his medical clinic for an examination as a result of an alleged sexual abuse. The State inquired as to whether a history of A.R. was taken during the

examination. The Defense then objected as to the hearsay, which prompted hearings on the record and outside the presence of the jury. A proffer was made as to what Whittington's testimony would be. When asked by the State what the child related to him as to the history of his injury, Whittington responded that the child told him his uncle had placed his mouth on his penis and went up and down and that his uncle had also licked his rectum. Whittington then asked the child if he experienced burning while urinating, any discharge from his penis, any type of anal discharge, or any nightmares.

¶51. Whittington was then asked by the State if he examined the child to determine if there were signs of any sexual abuse. He stated that upon examining the child's penis he noticed several small abrasions accompanied with some scabbing. Whittington testified that he determined the abrasions were bite marks, which was consistent with the history the child had given him.

¶52. Whittington was cross-examined by the Defense and further examined on re-direct by the State. The court then made the following findings:

> THE COURT: The Court hereby finds, as I have previously done, that the witness relating to the alleged victim who is the subject of Dr. Whittington's examination is obviously unavailable as a witness. The Court finds that this examination which was performed two or three days after the alleged incident, the content of that examination and the circumstances of the alleged victim receiving medical attention obviously provide a substantial indicia of reliability, and I will admit Dr. Whittington's testimony under 803(4) and 803(25).

Whittington then testified as to these same matters in front of the jury.

¶53. "The 'substantial indicia of reliability' required by M.R.E. 803(25) are necessary to prevent confrontation clause problems." *Eakes*, 665 So. 2d at 865 (*quoting* *Doe v. Doe*, 644 So. 2d 1199, 1206 (Miss. 1994). "The reliability of the statement must be judged independently of any corroborating evidence; otherwise, the confrontation clause may be violated." *Id.* (citing *Doe*, 644 So. 2d at 1204). "While no mechanical test is available, factors which should be considered in judging reliability are: spontaneity and consistent repetition; mental state of declarant; use of terminology unexpected of a child of similar age; and lack of motive to fabricate." *Id.* When the correct legal standard is used by the trial court, this Court will not reverse a finding of admissibility unless there is a finding of an abuse of discretion. *Id.*

¶54. Whittington stated that he walked into the room and asked, "[A.R.], tell me what happened." A.R. replied that his uncle had placed his private parts in his mouth and went up and down. The statement was spontaneous and made in response to a very broad and general question asked by the doctor. "Some factors that the court should examine to determine if there is sufficient indicia of reliability are. . .whether the statements were made spontaneously [or] whether suggestive techniques were used in eliciting the statement." Miss. R. Evid. 803 cmt. 25. These factors are not, however, exclusive, and the court must make an overall determination of "whether the child declarant was particularly likely to be telling the truth when the statement was made." *Griffith v. State*, 584 So. 2d 383, 388 (Miss.1991) (*quoting* *Idaho v. Wright*, 497 U.S. 805, 822(1990)).

¶55. This Court finds that the trial judge found sufficient indicia of reliability as required by Miss. R. Evid. 803(25) and did not abuse his discretion by admitting the testimony of Whittington. Therefore, his testimony was properly admitted after the appropriate hearings were had on the record finding

that under the two-part test there was substantial indicia of reliability.

**B. Testimony of M.H. --**

¶56. Hennington complains that the testimony of M.H. was improperly ruled admissible by the trial judge. He claims there was no on the record finding, as required by Miss. R. Evid. 803(25). The record clearly shows that there was a hearing on the record to determine if there were sufficient indicia of reliability in the proffered testimony of M.H.

¶57. M.H. described the relationship prior to the sexual abuse between A.R. and Hennington as wonderful. They did things together, such as "uncle type things." M.H. testified that she inquired why A.R. was having problems with his schoolwork. A.R. stated that he thought he maybe was being abused. M.H. and A.R. had done a study in Boy Scouts on the different types of abuse, such as emotional, physical, mental, and sexual. M.H. began to tell the court what A.R. said to her about sexual abuse when the Defense objected to this as hearsay. A hearing outside the presence of the jury took place, where M.H. testified as follows:

STATE: What did he tell you, M.H.?

M.H.: That he thought that that was what had been happening when I was talking about the -- definition of sexual abuse?

STATE: And did you ask him how this was happening? Tell me how the conversation proceeded.

M.H.: I didn't think it was my child. I thought that some other child had told A.R. these things, and then A.R. told me no, that it was him.

STATE: Did he indicate who, if anyone, had been doing this?

M.H.: After a long pause he did.

STATE: And who did he say?

M.H.: Uncle Matt.

STATE: Let me ask you something, M.H. Tell me, again, your child's relationship with his Uncle Matt.

M.H.: It was a very close relationship with Uncle Matt.

STATE: To further my understanding of that, he still has feelings for his uncle; is that correct?

M.H.: Sure, he does?

STATE: He loves his uncle.

M.H.: Uh-huh.

STATE: Do you have any reason to believe that your child would tell a lie on his uncle?

M.H.: No.

¶58. M.H. was then cross-examined by the Defense as to what A.R. had related to her. The court then made the following findings on the record:

THE COURT: Again, the time of the conversation between this witness and alleged victim being two days, the statements made by the child and the circumstances of the statement with his mother, I find it very difficult to understand the lack of reliability of that particular discourse and find that that is obviously under circumstances that would provide an indicia of reliability, and that the fact that the content of the statement is obviously corroborated by medical testimony, I'll admit the evidence.

¶59. It is true that the trial judge erred by considering the medical testimony of Whittington as a factor in finding sufficient indicia of reliability. The reliability of the statement must be judged independently of any corroborating evidence; otherwise the confrontation clause may be violated. *Doe*, 644 So. 2d at 1206. "To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Griffith*, 584 So. 2d at 388 (*quoting* ***Idaho v. Wright***, 497 U.S. at 822). However, there were other factors the judge considered. He considered the relationship between the mother and child. He considered the relationship between the child and the perpetrator and determined that there was not an apparent motive on the declarant's part to lie.

¶60. This Court finds there were sufficient indicia of reliability to allow the testimony of M.H. The lower court did not commit error by allowing the hearsay testimony of M.H., where she stated that A.R. told her that Hennington was the perpetrator who had sexually abused him.

### C. Testimony of Mr. Billy Mangold --

¶61. Hennington argues that the testimony of Mangold was inadmissible hearsay that did not meet the requirements of the exception to hearsay in Miss. R. Evid. 803(25). He complains that there was no on the record finding of factors considered by the judge prior to ruling the testimony admissible.

¶62. The trial judge conducted a hearing outside the presence of the jury as required by Miss. R. Evid. 803(25). Although the trial judge did not specifically mention the ***Wright*** factors he considered, he admitted the testimony of Mangold under Miss. R. Evid. 803(25). The record before this Court contains sufficient evidence of the ***Wright*** factors presented to the judge prior to his admission of Mangold's testimony.

¶63. Mangold was questioned by the State regarding his interview of A.R. and his findings as a result of that interview.

Q. And how did you conduct the interview after you said you had some small talk. How did you get to the point of asking him regarding the sexual abuse?

A. Basically I told him that I had talked with his parent, and his parents had talked with me and told me he had something that we needed to talk about, and if he would, just wherever he wanted to start, start and tell me about what happened.

Q. And did he immediately begin to tell you?

A. Yes, ma'am, he did.

Q. What did he tell you?

A. He told me that his Uncle Matt Hennington had taken his private parts in his hands and moved it up and down. He also told me that his uncle Matt would take his hands and place them on Mr. Matt Hennington until white stuff came out. He told me that Mr. Matt Hennington put his mouth on his penis, he referred to it as private part, and moved it up and down.

* * *

Q. At that time did you believe him?

A. Yes, ma'am, I did.

Q. Why?

A. Basically because he's very consistent with his information. His demeanor was such that he had a difficult time talking about it, he was very concerned, he was a little ashamed to talk about it, and he basically fit the pattern of numerous other children that we've talked with and dealt with on sexual abuse matters, and he was very believable in his statements.

¶64. After this proffered testimony was given outside the hearing of the jury, the trial judge found there were sufficient indicia of reliability as required by M.R.E. 803(25) so as to allow the testimony of Mangold. The judge made the following ruling:

THE COURT: As we've discussed in the past, since the Court has previously ruled that the alleged victim in this case obviously is unavailable, the Court hereby finds that the statements given is [sic] immediately after the day of alleged-- what was the date, Mr. Mangold?

A. The date after the alleged abuse took place is the date I interviewed the child, yes, sir.

THE COURT: Three days or so after the alleged incident, obviously, the child at the Department of Human Services, was preparing import of what he was doing there, and I find that there are particularized guarantees of trustworthiness in this particular case which provides substantial indicia of reliability, and I'll admit the testimony.

¶65. Again, this Court has previously held that no mechanical test is available to find substantial indicia of reliability. *Eakes*, 665 So. 2d at 865. Although not an exhaustive list, some factors to consider are spontaneity and consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. *Doe*, 644 So. 2d at 1206. Other factors to consider are whether there is an apparent motive on the part of the declarant to lie and the timing of the declarations. Miss. R. Evid. 803 cmt. 25. The record supplies this Court on review sufficient indicia of reliability to find that Mangold's testimony was properly admitted under Miss. R. Evid. 803(25). "When the correct legal standard is employed by the trial court, this Court will reverse a finding of admissibility only when there has been an abuse of discretion." *Eakes*, 665 So. 2d at 865; *Doe*, 644 So. 2d at 1207. This Court does not find that the trial court abused its discretion as to the

testimony admitted under Miss. R. Evid. 803(25). Therefore, Hennington's argument must fail, and the trial court is affirmed.

## CONCLUSION

¶66. The lower court correctly denied Hennington's Motion for Directed Verdict. The indictment sufficiently informed him of the charge against him. The statutes clearly define fellatio as a type of sexual penetration. This Court's prior decisions have concluded that proof of skin to skin contact between a person's mouth, lips or tongue and the genitalia of a person's body, whether by kissing, licking, or sucking is sufficient proof of sexual penetration.

¶67. A social worker employed by the State of Mississippi, without more, is not a law enforcement official. A social worker is not required to give *Miranda* warnings prior to conducting an investigatory interview. Where incriminating information, including a confession, is obtained in a non-custodial setting no such warnings are merited. The trial judge did not commit error by admitting Hennington's statements into evidence.

¶68. The child was correctly found unavailable to testify under Miss. R. Evid. 804(a)(2). Further findings, pursuant to Miss. R. Evid. 804(a)(6), were not justified. The child refused to testify as determined by the judge outside the presence of the jury. The argument that because the witness was a child there must be a necessary finding of unavailability under Miss. R. Evid. 804(a)(6) is without merit. Miss. R. Evid. 804(a) grants five exceptions with which to find a witness unavailable, and in the case of a child there are six. As long as the child witness is found unavailable under one of those exceptions, there is no need for a finding of unavailability under the sixth exception just because the witness is a child. The fact that a witness is a child is of no consequence.

¶69. The Court has contradicted itself in its previous decisions dealing with hearsay testimony pursuant to Miss. R. Evid. 803(4) and (25). This case presents the Court with the opportunity to make a clear ruling delineating guidelines for trial judges to follow when dealing with hearsay testimony under these subsections. In the present case, the correct procedures were utilized by the lower court judge. He conducted hearings on the record and outside the presence of the jury to determine that there were sufficient indicia of reliability prior to admitting the hearsay testimony of the witnesses. There was not an abuse of discretion on the part of the trial court. Therefore, the decision of the trial judge is affirmed and will not be disturbed.

¶70. **CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., AND McRAE, J., CONCUR IN RESULT ONLY.**

1. The name of the victim will not be used in an attempt to prevent him being further traumatized as a result of this criminal act.

2. Original language from *Mitchell* was omitted from language in *Jones*.